1155 AVENUE OF THE AMERICAS, NEW YORK, NY 10036-2711

**JENNER&BLOCK** LLP

August 4, 2022

Elizabeth A. Edmondson
Tel (212) 891-1606
eedmondson@jenner.com

**VIA ECF**

The Honorable Hector Gonzalez
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *Chimienti v. Wendy's Int'l, LLC, et al.*, Case No. 2:22-cv-02880-HG
Request for Pre-Motion Conference re: Motions to Sever and to Dismiss

Dear Judge Gonzalez:

I represent Defendant McDonald's Corporation. Pursuant to Section IV.A.2 of this Court's Individual Practices, I write to request a pre-motion conference in anticipation of motions to (i) sever the claims against the two Defendants, and (ii) dismiss the claims against McDonald's.

**Motion to Sever.** Plaintiff's claims against McDonald's should be severed from his claims against Wendy's because Plaintiff has not and cannot satisfy the Rule 20(a)(2) criteria for joinder. *See Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009). The Court has "broad discretion under Rule 21 to sever" the claims against the two Defendants, which would serve judicial economy and address the prejudice that would result from a joint trial. *Id.* at 159-60.

Plaintiff does not assert a "right to relief" against Wendy's and McDonald's "jointly, severally, or . . . with respect to or arising out of the same transaction [or] occurrence," as required for joinder of defendants. Fed. R. Civ. P. 20(a)(2)(A). Rather, Plaintiff's claims are premised on separate advertisements by competitor companies and different transactions at different stores in different locations. *See* Compl. ¶¶ 4–5, 27, 44; *cf. J.T. v. de Blasio*, 500 F. Supp. 3d 137, 175 (S.D.N.Y. 2020) ("An allegation that 'the defendants merely committed the same type of violation in the same way' is . . . insufficient to justify joinder") (citation omitted).

"Even if the threshold requirements of Rule 20(a)(2) [we]re met," severance would still be appropriate because it would "serve judicial economy" and ameliorate the "prejudice" that would result from a "joint trial." *See Deskovic*, 673 F. Supp. at 171. Because Plaintiff's claims involve different advertisements, different companies, and different transactions, the defendants will raise unique defenses and there would be little, if any, overlapping evidence. And because the claims are premised on different facts and evidence, "there is a risk that trying all of Plaintiff's claims in a single trial could lead to 'guilt by association and spillover prejudice.'" *Id.* (citation omitted). In contrast, Plaintiff would not suffer any prejudice from pursing his claims separately. *Id.* at 171–72; *see also Jem Accessories, Inc. v. JVCKENWOOD USA Corp.*, No. 20-4984, 2021 WL 706646,

The Honorable Hector Gonzalez
August 4, 2022
Page 2

at *4 (S.D.N.Y. Feb. 22, 2021) (plaintiff's preference "alone does not justify the joinder of multiple actions against separate [defendants] into one").

**Motion to Dismiss.** This case is about the world's most iconic fast food, the McDonald's hamburger. Consumers go to McDonald's — and return again and again — because they know what they are going to receive when they order a hamburger. Yet Plaintiff claims that when he recently visited a McDonald's, he was shocked to discover that his Big Mac and cheeseburger did not look exactly like the picture on the in-store menu. *See* Compl. ¶ 44. Plaintiff then filed this putative nationwide class action asserting statutory consumer fraud claims under the laws of "[e]ach of the fifty states and the District of Columbia," along with common law claims for breach of contract, negligent misrepresentation, and unjust enrichment. *Id.* ¶¶ 50, 64–89.

The fundamental premise of Plaintiff's complaint is implausible. Indeed, years before Plaintiff brought these claims, the Sixth Circuit identified Plaintiff's precise theory as the iconic example of non-actionable puffery:

> [R]easonable consumers know that marketing involves some level of exaggeration—what the law calls "puffery." . . . Think, for instance, of the **reasonable consumer at the fast-food drive-through. Does he expect that the hamburger he receives at the window will look just like the one pictured on the menu? Of course not.** He knows that puffery is a fact of life.

*Wysong Corp. v. APN, Inc.*, 889 F.3d 267, 271 (6th Cir. 2018) (emphasis added).

Plaintiff does not allege that McDonald's makes any misrepresentations about the specific quantity of meat in its patties, and where McDonald's does make representations about the size of its patties (*i.e.*, "Quarter Pounder"), Plaintiff does not allege that such representations are false. He also does not claim that any ingredients depicted in McDonald's ads — such as pickles, ketchup, or onions — are not included in the product customers receive. Rather, the gravamen of Plaintiff's complaint is that the McDonald's hamburger patty he received looked smaller than one on the menu, as allegedly illustrated by two images he cherry-picked from the internet (which are taken from different angles than the menu photo and do not in fact reflect any material distinction between the products).

Even assuming the images in the Complaint reflect a material distinction between the depicted hamburgers (which McDonald's disputes), Plaintiff's legal theory fails as a matter of law. To state a claim, Plaintiff must "do more than plausibly allege" that the McDonald's menu images "might conceivably be misunderstood by some few consumers." *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021) (citation omitted). Rather, Plaintiff must plausibly plead that the hamburger images on the McDonald's menu are "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).[1] But he cannot, because "[a] reasonable consumer does not lack

---

[1] While the consumer fraud statutes pursuant to which Plaintiff purports to sue "differ in certain particulars," they "all share a common requirement: to state a claim, a plaintiff must allege conduct

common sense." *Daniel v. Mondelez Int'l*, 287 F. Supp. 3d 177, 193 (E.D.N.Y. 2018). To the contrary, "[r]easonable consumers know that marketing involves some level of exaggeration and some amount of digital retouching to tell a story." *Louisiana-Pacific Corp. v. James Hardie Building Prods., Inc.*, 928 F.3d 514, 517–18 (6th Cir. 2019). They understand, for example, that images of fresh fruit and milk on a cereal box convey "a suggested addition" — not a promise that the cereal is made with fruit or comes with milk. *See Shaker v. Nature's Path Foods, Inc.*, No. 13-1138, 2013 WL 6729802, at *5 (C.D. Cal. Dec. 16, 2013).

The same is true here: the "reasonable consumer at the fast-food drive-through" does not "expect that the hamburger he receives at the window will look just like the one pictured on the menu." *Wysong*, 889 F.3d at 271. Consumers understand, for example, that McDonald's hamburgers are assembled by hand, and will look different depending on how the toppings are applied and how and where the patty is placed on the bun. *Compare* Compl. ¶ 27 (menu image with pickles, onions, mustard, and ketchup) *with id.* ¶¶ 28, 31 (Plaintiff's selected images of plain cheeseburgers). They also know that marketing images involve "some amount of digital retouching." *Louisiana-Pacific*, 928 F.3d at 517–18. In other words, even if consumers might observe the menu image before ordering, they would not assume that every hand-prepared McDonald's hamburger would look exactly like the picture.

If Plaintiff cannot show that the hamburger image on McDonald's menu is materially misleading, his tack-on claims necessarily fail. They also fail for independent reasons, including:

- Plaintiff's breach of contract claim fails because he does not allege that he was in privity with McDonald's, which distributes products primarily through franchisees. *See, e.g.*, *McNulty v. Polar Corp.*, No. 19-8903, 2020 WL 5658667, at *6 (S.D.N.Y. Sept. 23, 2020).

- Plaintiff's claim for negligent misrepresentation is barred by the economic loss rule, which precludes plaintiffs who have "suffered economic loss, but not personal or property injury," from recovering in tort if they have non-tort remedies available. *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) (citation and internal quotation marks omitted).

- Plaintiff's unjust enrichment claim is duplicative of his other claims and is accordingly barred by New York law. *See Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790–91 (2012).

Further, apart from the merits of his claims, Plaintiff lacks standing to seek injunctive relief. Now that he allegedly believes that McDonald's hamburgers may not look exactly like the images on its menu, there is no risk that he will "be harmed again in the same way." *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 339 (E.D.N.Y. 2018).

Finally, the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court* precludes Plaintiff from establishing personal jurisdiction over the claims of non-resident class members. 137 S. Ct. 1773, 1780–81 (2017).

---

that plausibly could deceive a reasonable consumer." *In re 100% Grated Parmesan Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 920 (N.D. Ill. 2017).

The Honorable Hector Gonzalez
August 4, 2022
Page 4

                                                                 Respectfully submitted,

                                                                 /s/ Elizabeth A. Edmondson
                                                                     Elizabeth A. Edmondson