UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Justin Chimienti, | Case No. 2:22-cv-02880-HG |
| Plaintiff, | |
| | The Honorable Hector Gonzalez |
| v. | |
| Wendy's International, LLC, and McDonald's Corporation, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MCDONALD'S CORPORATION'S
MOTION TO DISMISS CLASS ACTION COMPLAINT**

**JENNER & BLOCK LLP**

Elizabeth A. Edmondson (N.Y. Reg. 4705539)
eedmondson@jenner.com
1155 Avenue of the Americas
New York, NY 10036
Tel.: (212) 891-1600

Dean N. Panos (*pro hac vice*)
dpanos@jenner.com
353 N. Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350

Kate T. Spelman (*pro hac vice*)
kspelman@jenner.com
515 S. Flower Street, Suite 3300
Los Angeles, CA 90071
Tel: (213) 239-5100

Kelly M. Morrison (*pro hac vice*)
kmorrison@jenner.com
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Tel: (202) 639-6000

*Attorneys for McDonald's Corporation*

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

ALLEGATIONS OF THE COMPLAINT....................................................................3

ARGUMENT ......................................................................................................................4

I.    Plaintiff Does Not Plausibly Allege That The Burger Patties He Received
      Appeared Smaller Than The Photo On The McDonald's Website And In-Store
      Menu. ............................................................................................................................4

II.   Plaintiff Does Not Plausibly Allege That A Reasonable Consumer Would Be
      Misled By The Hamburger Photo On McDonald's Website And In-Store Menu..............7

III.  Plaintiff Also Fails To State A Claim Under The General Business Law Because
      He Does Not Plausibly Allege He Was Injured By Purchasing McDonald's
      Hamburgers.....................................................................................................................9

IV.   Plaintiff's Breach Of Contract Claim Must Also Be Dismissed Because He Fails
      To Plausibly Allege A Contract Or A Breach. ..............................................................11

V.    The Negligent Misrepresentation Claim Is Also Barred By The Economic Loss
      Rule. ............................................................................................................................13

VI.   The Unjust Enrichment Claim Should Also Be Dismissed As Duplicative. ...................14

VII.  Plaintiff Lacks Standing To Seek Injunctive Relief. .......................................................15

VIII. The Court Lacks Personal Jurisdiction Over Claims Of Non-Resident Class
      Members. ......................................................................................................................17

CONCLUSION...................................................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 100% Grated Parmesan Mktg. & Sales Practices Litig.*,
  275 F. Supp. 3d 910 (N.D. Ill. 2017) ...........................................................................7

*Aaronson v. Kellogg Co.*,
  837 F. App'x 850 (2d Cir. 2021) ...............................................................................14

*In re Aluminum Warehousing Antitrust Litig.*,
  833 F.3d 151 (2d Cir. 2016) .........................................................................................7

*Anderjaska v. Bank of Am., N.A.*,
  No. 19-3057, 2021 WL 877558 (S.D.N.Y. Mar. 9, 2021) .......................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................................................4, 7

*Atik v. Welch Foods, Inc.*,
  No. 15-5405, 2016 WL 5678474 (E.D.N.Y. Sept. 30, 2016) ..................................16

*Baron v. Pfizer, Inc.*,
  42 A.D.3d 627 (3d Dep't 2007) .................................................................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .....................................................................................................4

*Berman v. Sugo LLC*,
  580 F. Supp. 2d 191 (S.D.N.Y. 2008) ................................................................11, 12

*Biro v. Condé Nast*,
  807 F.3d 541 (2d Cir. 2015) ........................................................................................4

*Bristol-Myers Squibb Co. v. Superior Court*,
  137 S. Ct. 1773 (2017) .........................................................................................17, 18

*Budhani v. Monster Energy Co.*,
  527 F. Supp. 3d 667 (S.D.N.Y. 2021) ......................................................................15

*Buonasera v. Honest Co., Inc.*,
  208 F. Supp. 3d 555 (S.D.N.Y. 2016) ......................................................................17

*Cent. States S.E. & S.W. Areas Health & Welfare Fund v. Merck-Medco Managed
  Care, L.L.C.*,
  433 F.3d 181 (2d Cir. 2005) ......................................................................................16

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)..................................................................6

*Cherny v. Emigrant Bank*,
  604 F. Supp. 2d 605 (S.D.N.Y. 2009).................................................13

*Chufen Chen v. Dunkin' Brands, Inc.*,
  954 F.3d 492 (2d Cir. 2020)............................................................7, 18

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983)...............................................................................15

*Cohen v. JP Morgan Chase & Co.*,
  498 F.3d 111 (2d Cir. 2007)..................................................................7

*Colella v. Atkins Nutritionals, Inc.*,
  348 F. Supp. 3d 120 (E.D.N.Y. 2018) ................................................10

*Corsello v. Verizon N.Y., Inc.*,
  18 N.Y.3d 777 (2012) .........................................................................14

*Daniel v. Mondelez Int'l*,
  287 F. Supp. 3d 177 (E.D.N.Y. 2018) ..................................................8

*Dashnau v. Unilever Mfg. (US), Inc.*,
  529 F. Supp. 3d 235 (S.D.N.Y. 2021)...................................................7

*Davis v. Hain Celestial Grp., Inc.*,
  297 F. Supp. 3d 327 (E.D.N.Y. 2018) ................................................16

*Derbaremdiker v. Applebee's Int'l, Inc.*,
  No. 12-1058, 2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012) ...........9, 11

*Ebin v. Kangadis Food Inc.*,
  No. 13-2311, 2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013) ...............15

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013)...............................................................7, 9

*First Nationwide Bank v. Gelt Funding Corp.*,
  27 F.3d 763 (2d Cir. 1994)....................................................................6

*Gilleo v. J.M. Smucker Co.*,
  No. 20-2519, 2021 WL 4341056 (S.D.N.Y. Sept. 23, 2021) ..............13

*Gordon v. Hain Celestial Grp., Inc.*,
  No. 16-6526, 2017 WL 213815 (S.D.N.Y. Jan. 18, 2017) ..................14

*Gordon v. Target Corp.*,
No. 20-9589, 2022 WL 836773 (S.D.N.Y. Mar. 18, 2022) ........................................................6

*Haag v. Hyundai Motor Am.*,
969 F. Supp. 2d 313 (W.D.N.Y. 2013) .................................................................................12

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984) .................................................................................................................17

*Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*,
148 F. Supp. 3d 285 (S.D.N.Y. 2015) ......................................................................................16

*Holmes v. Air Line Pilots Ass'n, Int'l*,
745 F. Supp. 2d 176 (E.D.N.Y. 2010) ....................................................................................6

*Izquierdo v. Mondelez Int'l, Inc.*,
No. 16-4697, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ............................................10, 11

*In re KIND LLC "Healthy & All Natural" Litig.*,
209 F. Supp. 3d 689 (S.D.N.Y. 2016) ......................................................................................5

*Kommer v. Bayer Consumer Health*,
710 F. App'x 43 (2d Cir. 2018) ...............................................................................................16

*Lentell v. Merrill Lynch & Co. Inc.*,
396 F.3d 161 (2d Cir. 2005) ......................................................................................................5

*Louisiana-Pacific Corp. v. James Hardie Building Prods., Inc.*,
928 F.3d 514 (6th Cir. 2019) .....................................................................................................8

*Marshall v. Hyundai Motor Am.*,
51 F. Supp. 3d 451 (S.D.N.Y. 2014) ......................................................................................12

*Morrison v. Barcel USA, LLC*,
No. 18-531, 2019 WL 95477 (S.D.N.Y. Jan. 2, 2019) ...........................................................16

*Naimi v. Starbucks Corp.*,
798 F. App'x 67 (9th Cir. 2019) ..............................................................................................10

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) ..............................................................................................15, 17

*Noakes v. Syracuse Univ.*,
369 F. Supp. 3d 397 (N.D.N.Y. 2019) ...............................................................................11, 13

*Ostermeier-McLucas v. Rite Aid Hdqtrs. Corp.*,
549 F. Supp. 3d 276 (E.D.N.Y. 2021) ....................................................................................15

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
  712 F.3d 705 (2d Cir. 2013) ........................................................................................4

*Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*,
  301 F. Supp. 3d 840 (N.D. Ill. 2018) .......................................................................18

*Quintanilla v. WW Int'l, Inc.*,
  541 F. Supp. 3d 331 (S.D.N.Y. 2021) .................................................................11, 13

*Rodriguez v. It's Just Lunch, Int'l*,
  No. 07-9227, 2010 WL 685009 (S.D.N.Y. Feb. 23, 2010) ..................................11, 12

*Small v. Lorillard Tobacco Co.*,
  94 N.Y.2d 43 (1999) ...................................................................................................9

*Smith v. Local 819 I.B.T. Pension Plan*,
  291 F.3d 236 (2d Cir. 2002) ........................................................................................4

*Spratley v. FCA US LLC*,
  No. 17-62, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017) ......................................18

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
  No. 14-3826, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ...................................14

*Tomasino v. Estee Lauder Cos. Inc.*,
  44 F. Supp. 3d 251 (E.D.N.Y. 2014) ........................................................................17

*Turk v. Rubbermaid Inc.*,
  No. 21-270, 2022 WL 836894 (S.D.N.Y. Mar. 21, 2022) .........................................5

*Twohig v. Shop-Rite Supermarkets, Inc.*,
  519 F. Supp. 3d 154 (S.D.N.Y. 2021) ....................................................................7, 9

*Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*,
  455 F. App'x 102 (2d Cir. 2012) ..............................................................................12

*Warren v. Whole Foods Market Grp., Inc.*,
  574 F. Supp. 3d 102 (E.D.N.Y. 2021) ......................................................................13

*Warth v. Seldin*,
  422 U.S. 490 (1975) ...................................................................................................16

*Weinstein v. eBay, Inc.*,
  819 F. Supp. 2d 219 (S.D.N.Y. 2011) ........................................................................7

*Wright v. Publishers Clearing House, Inc.*,
  439 F. Supp. 3d 102 (E.D.N.Y. 2020) ............................................................9, 10, 11

*Wysong Corp. v. APN, Inc.*,
 889 F.3d 267 (6th Cir. 2018) ............................................................................................2, 8

*Zachmann v. Coleman Co. Inc.*,
 No. 20-9146, 2022 WL 161480 (S.D.N.Y. Jan. 18, 2022) ........................................................5

**Statutes**

New York General Business Law §§ 349 and 350 ..........................................................................9

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ......................................................................................4

## <u>INTRODUCTION</u>

This case is about the world's most iconic fast food, the McDonald's hamburger. Consumers go to McDonald's — and return again and again — because they know what they are going to receive when they order a hamburger. Yet Plaintiff claims that when he visited a McDonald's, he was shocked to discover that the Big Mac and Cheeseburger he received did not look exactly like the picture allegedly on the in-store menu.

As a preliminary matter, Plaintiff fails to plausibly allege that the Big Mac and Cheeseburger he purchased had a materially smaller beef patty than the patty allegedly reflected in the menu photo (which serves as the sole basis for his claims against McDonald's). He does not provide *any* description of the hamburgers he allegedly received, but instead relies on two cherry-picked images of McDonald's hamburgers he found on the internet — an amateur photograph and a still image taken from a YouTube video. These images do not support Plaintiff's conclusory allegation that McDonald's "materially overstates the size of its beef patties." Indeed, the allegation is refuted by the very article and video from which he plucked the images, which reflect the commonsense notion that the appearance of a hamburger patty may differ based on the angle of a photograph or the placement of the patty on a bun.

Even if Plaintiff had plausibly alleged that the hamburgers he purchased looked materially different than the products allegedly depicted on the in-store menu (which he has not), the Complaint must still be dismissed because its fundamental premise is implausible. To state a claim, Plaintiff must show that a reasonable consumer is likely to be deceived by a hamburger image allegedly on McDonald's in-store menu and website. He cannot do so, because it is common sense that actual food products from a quick service restaurant may not appear identical to their

professionally photographed marketing images.  To illustrate this concept, the Sixth Circuit recently explained:

> Think, for instance, of the reasonable consumer at the fast-food drive-through. Does he expect that the hamburger he receives at the window will look just like the one pictured on the menu?  Of course not.[1]

The same is true here.  Plaintiff does not (and cannot) plausibly allege that a reasonable consumer expects McDonald's hamburgers, which are hand-assembled in a matter of seconds, to look exactly like a professional photo on a menu or website or reflect the exact same placement of the patty on the bun.

Because the very foundation of the Complaint is flawed, all of its claims crumble: there can be no statutory consumer protection violation, no negligent misrepresentation, no contractual breach, and no unjust enrichment.  Even if Plaintiff could overcome this hurdle, his claims still suffer from several additional defects that require dismissal:

- Plaintiff fails to plausibly allege that he suffered an injury by purchasing McDonald's hamburgers that is cognizable under New York General Business Law §§ 349 and 350.

- The breach of contract claim fails because Plaintiff pleads neither an enforceable contract with McDonald's, nor a specific promise that it allegedly breached.

- Plaintiff's negligent misrepresentation claim is barred by New York's economic loss rule because he does not plead any "special relationship" with McDonald's.

- The unjust enrichment claim must be dismissed as duplicative of Plaintiff's other claims.

- Plaintiff lacks standing to seek injunctive relief because now that he is aware that McDonald's hamburgers allegedly look different from the in-store menu, there is no likelihood that he could be "deceived" by the menu in the future.

---

[1] *Wysong Corp. v. APN, Inc.*, 889 F.3d 267, 271 (6th Cir. 2018).

- The Court lacks personal jurisdiction over non-resident putative class members who purchased McDonald's hamburgers outside New York, and it should therefore dismiss their claims from this lawsuit.

For all of these reasons, Plaintiff's Complaint must be dismissed in its entirety.

### ALLEGATIONS OF THE COMPLAINT

Plaintiff asserts that, on some unspecified date, he "purchased a Big Mac and a cheeseburger at" an unidentified "McDonald's store located in the state of New York," for an undisclosed price. Compl. ¶ 44. Plaintiff claims that he "expected the burgers that he purchased to be similar in size to the pictures of the burgers in [McDonald's] advertisements and on [McDonald's] store menu ordering boards." *Id.* However, the only alleged McDonald's "advertisement[]" that Plaintiff identifies is an image of a Cheeseburger that is allegedly depicted "on McDonald's website and store menu ordering boards":



*Id.* ¶ 27. Notably, Plaintiff does not allege that he saw this image before purchasing the Big Mac and Cheeseburger. *See generally id.*

Nonetheless, without providing *any* information about the Big Mac or Cheeseburger that he allegedly received, Plaintiff baldly asserts they "were much smaller than advertised." *Id.* ¶ 44. He then leaps to the unsupported conclusion that "McDonald's materially overstates the size of

the beef patties for nearly every menu item in its current advertisements." *Id.* ¶ 37.  On that basis, Plaintiff purports to represent a nationwide class asserting statutory consumer fraud claims under the laws of "[e]ach of the fifty states and the District of Columbia," along with common law claims for breach of contract, negligent misrepresentation, and unjust enrichment. *Id.* ¶¶ 50, 64–89.

## ARGUMENT

Under Rule 12(b)(6), "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (citation and internal quotation marks omitted).  Rather, to survive a motion to dismiss, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'"  *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Importantly, a court must "draw on its judicial experience and common sense" in ruling on a motion to dismiss.  *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not 'show[n]' . . . that the pleader is entitled to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679) (alteration in original).  Rather, a plaintiff must "allege more by way of factual content to 'nudg[e]' his claim" of unlawful action "'across the line from conceivable to plausible.'"  *Iqbal*, 556 U.S. at 683 (quoting *Twombly*, 550 U.S. at 570).

## I.    Plaintiff Does Not Plausibly Allege That The Burger Patties He Received Appeared Smaller Than The Photo On The McDonald's Website And In-Store Menu.

Plaintiff does not allege that McDonald's makes any misrepresentations about the specific quantity of meat in its patties.  Where McDonald's does make representations about the size of its patties (*e.g.*., "Quarter Pounder"), Plaintiff does not allege that such representations are false.  He

4

also does not claim that any ingredients depicted in McDonald's ads — such as pickles, ketchup, or onions — are not included in the product customers receive.

Rather, the gravamen of Plaintiff's complaint is that the McDonald's hamburger patties he received allegedly looked smaller than in the professional picture allegedly on the menu and website. However, Plaintiff does not plead that he ever saw images of a Big Mac or Cheeseburger on McDonald's website or in-store menu before purchasing the products. This alone dooms his claim.[2] He also includes *zero* information about the Big Mac and Cheeseburger he allegedly received, which independently requires dismissal. Instead, Plaintiff pastes into the Complaint two images cherry-picked from the internet. *See* Compl. ¶¶ 28, 31. Plaintiff does not (and cannot) offer any information about when, where, how, or by whom these images were taken. And he does not claim that these photos accurately depict the hamburgers he purchased—indeed, neither is a Big Mac.

In any event, these images are taken from different angles than the menu photo on which Plaintiff allegedly relied (*see id.* ¶ 27) and do not in fact suggest any distinction between the size of the patties sold to consumers and those photographed for the menu (because no such distinction exists). But even if the Court were willing to construe the Complaint as alleging such a distinction, it should not draw the "unwarranted deduction[]" that these cherry-picked images are representative of the hamburgers Plaintiff received. *See Lentell v. Merrill Lynch & Co. Inc.*, 396

---

[2] *See, e.g.*, *In re KIND LLC "Healthy & All Natural" Litig.*, 209 F. Supp. 3d 689, 697 (S.D.N.Y. 2016) (dismissing challenge to "non GMO" label "because no plaintiff alleges they read and relied on the 'non-GMO' labeling statement prior to purchasing the products"); *Zachmann v. Coleman Co. Inc.*, No. 20-9146, 2022 WL 161480, at *4 (S.D.N.Y. Jan. 18, 2022) (granting motion to dismiss because plaintiffs "'nowhere state in their complaint that they saw any of these statements before they purchased' the coolers") (internal quotations, alternations, and citation omitted); *Turk v. Rubbermaid Inc.*, No. 21-270, 2022 WL 836894, at *9 (S.D.N.Y. Mar. 21, 2022) (dismissing claims because plaintiffs "failed to allege that they actually saw or were aware of the statements in question on the Products' labels before buying them").

F.3d 161, 174–75 (2d Cir. 2005) (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994)).

Indeed, the sources from which Plaintiff pulled the images conclusively refute his assertion that "McDonald's materially overstates the size of the beef patties for nearly every menu item in its current advertisements," which is based solely on his opinion that the "beef patty" in the two internet images he found allegedly "comes nowhere near the edge of the bun." Compl. ¶¶ 28–30, 37. The article from which Plaintiff pulled the first Cheeseburger image, *I tried every single burger at McDonald's and ranked them from worst to best* (*see id.* ¶ 28), includes more than a dozen photos of McDonald's hamburgers with patties "extending all the way to the edge of the bun." *See* Ex. 1.[3] And contrary to Plaintiff's characterization, the reviewer in the article describes as "perfect" the "bun-to-patty ratio" of the Cheeseburger Plaintiff derides in the Complaint. *Compare* Ex. 1 at 21-22 *with* Compl. ¶ 28. The two-minute YouTube video cited in the Complaint (*see* ¶ 31) purports to shows a McDonald's employee assembling several McDonald's sandwiches, and only serves to confirm the commonsense notion that patty placement may vary as McDonald's hamburgers are hand-assembled to order.

Plaintiff's failure to plausibly allege that he received anything different than what he was allegedly promised dooms all of his claims.

---

[3] The Court is entitled to consider the full contents of these sources, which Plaintiff incorporated into the Complaint by reference. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *Gordon v. Target Corp.*, No. 20-9589, 2022 WL 836773, at *1–4 (S.D.N.Y. Mar. 18, 2022) (drawing facts from the operative pleading and "the various other materials" the court was entitled to consider, including a publication referenced in the complaint, in granting motion to dismiss); *Holmes v. Air Line Pilots Ass'n, Int'l*, 745 F. Supp. 2d 176, 193–94 (E.D.N.Y. 2010) ("[I]n resolving a Rule 12(b)(6) motion to dismiss . . ., courts may consider 'the full text of documents that are quoted in the complaint or documents that the plaintiff either possessed or knew about and relied upon in bringing the suit.'") (citation omitted).

## II.   **Plaintiff Does Not Plausibly Allege That A Reasonable Consumer Would Be Misled By The Hamburger Photo On McDonald's Website And In-Store Menu.**

To state a claim, Plaintiff must also show that the hamburger photo on McDonald's website and in-store menu (Compl. ¶¶ 27, 44) is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).[4]  The "applicable legal standard is whether a reasonable consumer, not the least sophisticated consumer, would be misled . . . ." *Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011).  This is an "objective" standard, which is not defined by the unique views of the particular consumer before the Court.  *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007).

Consistent with the Supreme Court's admonition in *Iqbal*, this Court must apply "common sense" in determining whether Plaintiff has stated a plausible claim of deception.  556 U.S. at 679.  Further, "it is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer."  *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (quoting *Fink*, 714 F.3d at 741).

Here, even assuming the images in the Complaint reflect a material distinction between the depicted hamburgers (which they do not), or that they can serve as a "stand-in" for allegations about Plaintiff's own experience (which they cannot), his legal theory fails as a matter of law

---

[4] Plaintiff's attempt to invoke "myriad state consumer protection and unfair trade statutes" by listing them "in alphabetical order by state, without pleading any of their elements," should be dismissed out-of-hand.  *See In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 163 (2d Cir. 2016).  In any event, they all require "a plaintiff [to] allege conduct that plausibly could deceive a reasonable consumer," *In re 100% Grated Parmesan Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 920 (N.D. Ill. 2017), and thus fail for the reasons discussed herein.  The same is true of Plaintiff's common-law claims.  *See, e.g.*, *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 165 (S.D.N.Y. 2021) (negligent misrepresentation, breach of warranty, and unjust enrichment claims necessarily failed "[b]ecause I have already determined that Plaintiffs have failed to allege that the Product's labeling would be likely to deceive or mislead a reasonable consumer"); *Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 247 (S.D.N.Y. 2021) (same).

because "[a] reasonable consumer does not lack common sense." *Daniel v. Mondelez Int'l*, 287 F. Supp. 3d 177, 193 (E.D.N.Y. 2018). Indeed, years before Plaintiff brought these claims, the Sixth Circuit identified his precise theory as an iconic example of non-actionable puffery:

> [R]easonable consumers know that marketing involves some level of exaggeration—what the law calls "puffery." . . . Think, for instance, of the **reasonable consumer at the fast-food drive-through. Does he expect that the hamburger he receives at the window will look just like the one pictured on the menu? Of course not.** He knows that puffery is a fact of life.

*Wysong*, 889 F.3d at 271 (emphasis added); *see also Louisiana-Pacific Corp. v. James Hardie Building Prods., Inc.*, 928 F.3d 514, 517–18 (6th Cir. 2019).

Consumers understand that McDonald's hamburgers are assembled by hand and will look different depending on how the toppings are applied and how and where the patty is placed in reference to the bun. *Compare, e.g.*, Compl. ¶ 27 (menu image with pickle, onions, mustard, and ketchup) *with id.* ¶¶ 28, 31 (Plaintiff's selected images of plain cheeseburgers). In other words, even if consumers might observe the menu image before ordering, they would not assume that every hand-prepared McDonald's hamburger would look exactly like the picture. And they would not presume that every patty would be placed in the same position on the bun or assume that if their patty does not extend to "the edge of the bun" on all sides, that it must somehow be smaller than the item depicted on the menu.

The very article upon which Plaintiff relies (*see* Compl. ¶ 33) underscores that reasonable consumers know the difference between marketing photos and reality. They understand, for example, that while "a burger photo shoot may take hours," a restaurant burger could be "slapped together in 30 seconds by a teenager rushing to keep up with a drive-thru line that is running 10 cars deep." Ex. 2 at 1 ("Of course your burger doesn't look [as] beautiful."). Further, the article confirms that even if "some few consumers" had unreasonable expectations about food images

(*see Twohig*, 519 F. Supp. 3d at 160), they would quickly be dispelled because the information is available in a way "that consumers can easily evaluate." Ex. 2 at 3. In the words of Plaintiff's article: "you can walk into a local fast-food joint, see [if] everyone is eating burgers that look [different than] the ads, and choose to walk back out." *Id.*

Finally, Plaintiff ignores that there is good reason for the angle at which the menu image was shot, and the placement of the burger's various components (*e.g.*, upper bun pushed slightly back to reveal toppings). The image is designed to show customers the ingredients that are included on a standard McDonald's Cheeseburger—a slice of cheese, a pickle, chopped onions, ketchup, and mustard—so they may understand how it compares to the restaurant's other offerings and make an informed selection. Clear disclosure of information that is helpful to consumers in choosing a hamburger is the opposite of deception.

Because Plaintiff fails to plausibly allege that the McDonald's Cheeseburger image on the in-store menu is "likely to mislead a reasonable consumer acting reasonably under the circumstances," *Fink*, 714 F.3d at 741, his Complaint must be dismissed for failure to state a claim.

### III.    Plaintiff Also Fails To State A Claim Under The General Business Law Because He Does Not Plausibly Allege He Was Injured By Purchasing McDonald's Hamburgers.

In addition to alleging conduct likely to deceive a reasonable consumer, pleading a claim under Sections 349 and 350 of the New York General Business Law (the "GBL") requires a plaintiff to assert "a cognizable injury." *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 113 (E.D.N.Y. 2020). To do so, Plaintiff "must plausibly allege that [he] suffered 'actual or pecuniary harm that is separate and apart from the alleged deception itself.'" *Id.* (quoting *Derbaremdiker v. Applebee's Int'l, Inc.*, No. 12-1058, 2012 WL 4482057, at *7 (E.D.N.Y. Sept. 26, 2012)). Thus, it is not sufficient for Plaintiff to allege that he would not have purchased a McDonald's hamburger but for the challenged advertisement. *Compare, e.g.*, *Small v. Lorillard*

*Tobacco Co.*, 94 N.Y.2d 43, 56 (1999) (plaintiffs who alleged that, absent the purported deception, "they never would have purchased cigarettes," did not suffer injury under Section 349) *with* Compl. ¶ 40 (alleging "Defendants' promise to consumers of a large portion of food with their purchase are . . . causing consumers to . . . make purchases that they would not have otherwise made"). Nor may Plaintiff recover "for purely subjective dissatisfaction with the products [he] receive[d]." *See Wright*, 439 F. Supp. 3d at 114.

The only potentially viable theory in a case like this is a "price premium" theory. However, that would require Plaintiff to plausibly allege that he paid a higher price for McDonald's hamburgers because of the images on the in-store menu—which he has not done. *See, e.g.*, *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-4697, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016). The boilerplate assertion that consumers allegedly "receive[] food that is much lower in value than what is being promised" (Compl. ¶ 38) does not suffice, because the Complaint "lacks any semblance of *facts* illustrating that the Plaintiff[] in fact paid such a premium." *Wright*, 439 F. Supp. 3d at 114 (emphasis added). He does not, for example, identify any comparator products that are sold for a lower price because their in-store menu images are allegedly more accurate,[5] or identify a specific ingredient (e.g., onions) or unique quality (e.g., fat free) that he was allegedly promised but did not receive. *See, e.g.*, *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018) (conclusory allegation of "premium" insufficient to plead injury under GBL §§ 349 and 350 where plaintiff "provides no facts regarding what the premium was, what price he paid for the products, or the price of non-premium products"); *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019) (same) (applying New York law). He does not plead any facts making

---

[5] In fact, Plaintiff also alleges that hamburgers sold by a competitor appear smaller than on the in-store menu. *See* Compl. ¶¶ 3–6.

it plausible that "the price of [McDonald's hamburgers] was inflated as result of" the alleged in-store menu image. *See Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 629 (3d Dep't 2007). Indeed, as noted above, Plaintiff does not plausibly allege that the hamburgers he received were materially different from the depictions on the in-store menu. *Supra* pp. 5-6.

Plaintiff simply alleges that two McDonald's hamburgers he bought at an unspecified location for an unspecified price "failed to live up to [his] individual expectations" that they would be larger. *Wright*, 439 F. Supp. 3d at 115. Such allegations fail to allege a cognizable injury under GBL Sections 349 and 350. *See Izquierdo*, 2016 WL 6459832, at *7 (allegation that plaintiffs "were financially injured after purchasing the Candy and receiving less Candy than they believed they bargained for" did not plead injury under GBL § 349); *Derbaremdiker*, 2012 WL 4482057, at *7 (allegation that plaintiff "received less than the represented value" because he "believed his odds of winning a prize . . . was higher than his actual odds" failed under Section 349).

## IV.    Plaintiff's Breach Of Contract Claim Must Also Be Dismissed Because He Fails To Plausibly Allege A Contract Or A Breach.

To state a breach of contract claim, Plaintiff must plausibly allege, among other things, "the existence of a contract," and "a specific promise or obligation that was breached." *Noakes v. Syracuse Univ.*, 369 F. Supp. 3d 397, 418 (N.D.N.Y. 2019) (citations omitted). "Conclusory allegations that a defendant breached an agreement are insufficient to support a breach of contract claim." *Id.* (citation omitted). Nor can Plaintiff state a contract claim based on his "extrinsic expectations" about a product. *Quintanilla v. WW Int'l, Inc.*, 541 F. Supp. 3d 331, 350 (S.D.N.Y. 2021). "Rather, a claimant must demonstrate the existence of an enforceable contract, through specific allegations about the parties to the agreement, the date of the contract's formation, and the contract's 'major terms.'" *Rodriguez v. It's Just Lunch, Int'l*, No. 07-9227, 2010 WL 685009, at *10 (S.D.N.Y. Feb. 23, 2010) (quoting *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y.

2008)); *see also Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F.

App'x 102, 104 (2d Cir. 2012) (district court properly dismissed claim for failure to allege the

existence of a binding contract where plaintiff failed to include "factual allegations regarding, *inter

alia*, the formation of the contract, the date it took place, and the contract's major terms").  "A

claim that fails 'to allege facts sufficient to show that an enforceable contract existed' between the

parties is subject to dismissal." *Rodriguez*, 2010 WL 685009, at *10 (quoting *Berman*, 580 F.

Supp. 2d at 202).

Here, Plaintiff's failure to plead facts establishing "the specific contract involved" is

"itself . . . fatal." *See Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 468 (S.D.N.Y. 2014).

He does not allege any facts about the formation of the alleged contract, when it was allegedly

entered, with whom, or the specific terms that were allegedly breached.  Instead, he simply states

in a conclusory fashion that "Defendants breached their sales contracts with Plaintiff and similarly

situated customers who purchased . . . an Overstated McDonald's Menu item."  Compl. ¶ 73.  That

is insufficient.  *See, e.g.*, *Marshall*, 51 F. Supp. 3d at 468 (allegations that plaintiffs "'entered into

certain contracts' . . . pursuant to which 'Hyundai would provide Plaintiffs . . . with certain Sonata

vehicles that were in proper working order . . .' but Defendant 'breached said contracts . . .'" were

"so factually sparse as to fail to meet the pleading requirement").  The implausibility of Plaintiff's

contract claim is underscored by his failure to allege privity with McDonald's, which distributes

products primarily through franchisees.  *See* Compl. ¶ 44; *compare Marshall*, 51 F. Supp. 3d at

469 (dismissing contract claim against Hyundai for lack of privity because plaintiffs purchased

allegedly defective vehicles from authorized dealers).  Because privity is necessary to state a

breach of contract claim under New York law, Plaintiff's claim must be dismissed.  *See id.* at 469–

70; *Haag v. Hyundai Motor Am.*, 969 F. Supp. 2d 313, 316–17 (W.D.N.Y. 2013).

Finally, even if Plaintiff had plausibly alleged some contract with McDonald's, he has not identified "a specific promise or obligation that was breached." *Noakes*, 369 F. Supp. 3d at 418. The gist of Plaintiff's claim is that the hamburgers he received were allegedly smaller than he anticipated, but Plaintiff's subjective expectations are irrelevant. *See Quintanilla*, 541 F. Supp. 3d at 350 (plaintiff could not state a contract claim based on "extrinsic expectations" that she would receive "access to in-person services"). Rather, the terms of a contract are dictated by "the four corners of the agreement," *id.* (citation omitted), and Plaintiff has not alleged that the purported "sales contracts" (Compl. ¶ 73) contained a promise that hamburgers purchased in the restaurant would look exactly the same as the image allegedly on the in-store menu. In any event, as explained above, Plaintiff has not plausibly alleged that he received anything materially different than what was allegedly depicted on the menu.

## V.    The Negligent Misrepresentation Claim Is Also Barred By The Economic Loss Rule.

In addition to the defects identified above – i.e., his failure to plausibly allege either a misrepresentation or receipt of something different than he allegedly expected – Plaintiff's negligent misrepresentation claim is barred by New York's economic loss rule. That doctrine "restricts the remedy of plaintiffs who have suffered economic loss, but not personal or property injury, to an action in contract." *Warren v. Whole Foods Market Grp., Inc.*, 574 F. Supp. 3d 102, 118 (E.D.N.Y. 2021); *see also Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 609–10 (S.D.N.Y. 2009) (dismissing negligent misrepresentation claim pursuant to the economic loss doctrine); *Gilleo v. J.M. Smucker Co.*, No. 20-2519, 2021 WL 4341056, at *7 (S.D.N.Y. Sept. 23, 2021). Here, Plaintiff cannot seek a tort remedy for negligent misrepresentation because he pleads only economic harm.

While a plaintiff may be able to sidestep the economic loss doctrine by alleging a "special relationship" with the defendant, such a special relationship does not arise in the context of an ordinary, arms-length sale of consumer products. *See, e.g.*, *Aaronson v. Kellogg Co.*, 837 F. App'x 850, 851 (2d Cir. 2021); *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-3826, 2015 WL 5579872, at *23–26 (E.D.N.Y. Sept. 22, 2015) (dismissing claim for negligent misrepresentation based on sale of allegedly mislabeled Greek Yogurt); *Gordon v. Hain Celestial Grp., Inc.*, No. 16-6526, 2017 WL 213815, at *7 (S.D.N.Y. Jan. 18, 2017) (dismissing negligent misrepresentation claim based on shampoo that was allegedly deceptively marketed because plaintiff failed to show "that the parties shared a level of trust and confidence beyond that typical of counter-parties in arms-length consumer transactions"). Plaintiff alleges no damages beyond economic loss and pleads no facts suggesting that his purchase of McDonald's hamburgers was anything other than a routine commercial transaction. His claim for negligent misrepresentation is not cognizable under New York law.

## VI.    The Unjust Enrichment Claim Should Also Be Dismissed As Duplicative.

Because Plaintiff has not adequately alleged either a misrepresentation or an injury, he has not plausibly alleged that McDonald's was unjustly enriched. His claim also fails because it is merely duplicative. Under New York law, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). Rather, such a claim is viable "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.*

Following *Corsello*, New York federal courts regularly dismiss unjust enrichment claims as duplicative when they are based on the same factual allegations as a plaintiff's other claims.

*See, e.g.*, *Ostermeier-McLucas v. Rite Aid Hdqtrs. Corp.*, 549 F. Supp. 3d 276, 284–85 (E.D.N.Y. 2021) (dismissing as "duplicative" unjust enrichment claim that "arises out of the same factual allegations as the NYGBL claims: namely, that defendant unlawfully packaged its products in a misleading way"); *Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 688 (S.D.N.Y. 2021) (dismissing unjust enrichment claim "premised on the same theory of misrepresentation that undergirds" plaintiff's statutory and tort claims); *Ebin v. Kangadis Food Inc.*, No. 13-2311, 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013) (dismissing claim where "plaintiffs have failed to explain how their unjust enrichment claim is not merely duplicative of their other causes of action"). Here, Plaintiff's unjust enrichment claim simply incorporates the Complaint's prior allegations "by reference" and alleges that, "[b]y their wrongful acts and omissions, Defendants have been unjustly enriched at the expense of Plaintiff and members of the Class." Compl. ¶¶ 86–87. It is entirely duplicative of Plaintiff's other claims, and accordingly fails as a matter of law.

## VII.    Plaintiff Lacks Standing To Seek Injunctive Relief.

"For each form of relief sought, a plaintiff 'must demonstrate standing separately.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (citation omitted). A plaintiff "lack[s] standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat'" of future injury. *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 1011-12 (1983)). In other words, "[a]lthough past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Id.*

Federal courts in New York regularly apply this principle to conclude that a consumer cannot seek injunctive relief once they have learned of a manufacturer's allegedly "deceptive" advertising, as there is no likelihood that they will be similarly deceived in the future. *See, e.g.*,

15

*Kommer v. Bayer Consumer Health*, 710 F. App'x 43, 44 (2d Cir. 2018) (no standing to seek injunctive relief where plaintiff now knows of the alleged "deception and false advertising" and is thus "no longer likely to purchase another pair of Dr. Scholl's Custom Fit Orthotics"); *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 339 (E.D.N.Y. 2018) ("To the extent that plaintiff was deceived by defendants' products, he is now aware of the truth and will not be harmed again in the same way."); *Morrison v. Barcel USA, LLC*, No. 18-531, 2019 WL 95477, at *2 (S.D.N.Y. Jan. 2, 2019); *Atik v. Welch Foods, Inc.*, No. 15-5405, 2016 WL 5678474, at *5 (E.D.N.Y. Sept. 30, 2016) (collecting cases holding that, "because the plaintiffs were aware of the deceptive advertising and were unlikely to be deceived in the future, the plaintiffs failed to allege a risk of future harm"). That rule applies with equal force here: now that Plaintiff knows that McDonald's hamburgers allegedly look smaller in real life than on the menu and website, there is no risk that he will be "deceived" by McDonald's advertising in the future.

The fact that Plaintiff purports to represent a class of consumers who purchased McDonald's hamburgers does not change this result. "[S]tanding cannot be acquired through the back door of a class action." *Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*, 148 F. Supp. 3d 285, 292 (S.D.N.Y. 2015) (citation and internal quotation marks omitted). Instead, as the Second Circuit has made clear, the named class representatives "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Cent. States S.E. & S.W. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)). Thus, even if some other class members may not know that McDonald's hamburgers prepared in restaurants may not look exactly like the image on the menu, that is not enough to establish Article III standing: "There is no

exception to demonstrating future injury when the plaintiff is pursuing a class action," so "the named plaintiff[] must have standing in order to seek injunctive relief on behalf of the class." *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 564 (S.D.N.Y. 2016); *see also Tomasino v. Estee Lauder Cos. Inc.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014) ("[T]he fact that unknowing class members might purchase [the challenged] products based on the defendants' allegedly unlawful advertising does not establish standing."). Because Plaintiff does not allege that he is "likely to be harmed again in the future in a similar way," *Nicosia*, 834 F.3d at 239, he is barred from seeking injunctive relief.

## VIII. The Court Lacks Personal Jurisdiction Over Claims Of Non-Resident Class Members.

Finally, even if Plaintiff's allegations are sufficient to support personal jurisdiction over the claims of putative class members who allegedly purchased McDonald's hamburgers in New York, his complaint contains *no* facts that support personal jurisdiction over McDonald's as to claims arising out of the purchase of hamburgers by non-New York consumers. The Supreme Court has long held that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984). The Supreme Court applied that principle to hold that a court cannot exercise specific personal jurisdiction over the claims of nonresident class members whose injuries did not take place in the forum state. *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017).

In *Bristol-Myers Squibb*, the plaintiffs — most of whom were not California residents — sued Bristol-Meyers Squibb, a non-California corporation, in California state court for alleged injuries arising out of their use of the drug Plavix. *Id.* at 1778. The Supreme Court held that the

California state courts could not exercise specific personal jurisdiction over the claims of non-resident plaintiffs, as they "were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California. *Id.* at 1781. In so holding, the Court emphasized that "[t]he mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* "[W]hat is missing," the Court concluded, "is a connection between the forum and the specific claims at issue." *Id.*[6]

In keeping with *Bristol-Myers Squibb*, the Second Circuit recently affirmed the dismissal of "out-of-state-plaintiffs' claims" in a consumer class action against Dunkin Donuts "for lack of personal jurisdiction" because plaintiffs failed to show that the company had sufficient "contacts with New York" to allow the exercise of general jurisdiction. *Chufen Chen*, 954 F.3d at 500. The same is true here. Like Dunkin Donuts, McDonald's "is not incorporated or headquartered in New York." *Id.*; *see* Compl. ¶ 46. It "is a franchisor" engaged in "nationwide business activity," and Plaintiff has "made no showing that the company's relationship with New York [i]s in any way significant or exceptional" as compared to the 50 other United States jurisdictions in which its franchises are located. *Chufen Chen*, 954 F.3d at 500; *see also, e.g.*, *Anderjaska v. Bank of Am., N.A.*, No. 19-3057, 2021 WL 877558, at *3 (S.D.N.Y. Mar. 9, 2021) (allegations of "a substantial

---

[6] *See also, e.g.*, *Spratley v. FCA US LLC*, No. 17-62, 2017 WL 4023348, at *7 (N.D.N.Y. Sept. 12, 2017) (applying *Bristol-Myers Squibb* to hold that "the Court lacks specific jurisdiction over the out-of-state Plaintiffs' claims" when they "have shown no connection between their claims and Chrysler's contacts with New York"); *Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d 840, 864 (N.D. Ill. 2018), *class decertified*, 2018 WL 3659349 (N.D. Ill. Aug. 2, 2018) (dismissing "the claims of the non-Illinois-resident class members" and holding that *Bristol-Myers Squibb* precluded the exercise of personal jurisdiction over those class members, as their "claims do not relate to defendants' contacts with Illinois").

number of physical banking locations and ATMs, a large office space, and a large workforce in New York" did not satisfy plaintiffs' "heavy burden" of showing sufficiently "extensive" contacts to permit exercise of general jurisdiction).

Plaintiff's attempt to assert claims on behalf of non-New York class members against a non-New York company based on non-New York purchases should be rejected. The Court lacks jurisdiction over those nonresidents' claims, and they should be dismissed.

## CONCLUSION

For the foregoing reasons, McDonald's respectfully requests that the Court grant its motion to dismiss.

Dated:  September 30, 2022                 Respectfully submitted,

                                          JENNER & BLOCK LLP

                                          By:   /s/ Dean N. Panos
                                          Dean N. Panos (*pro hac vice*)
                                          Elizabeth A. Edmondson (N.Y. Reg. 4705539)
                                          Kate T. Spelman (*pro hac vice*)
                                          Kelly M. Morrison (*pro hac vice*)

                                          *Attorneys for Defendant*
                                          *McDonald's Corporation*