UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JUSTIN CHIMIENTI,

                    Plaintiff,

          v.

WENDY'S INTERNATIONAL, LLC and
MCDONALD'S CORPORATION,

                    Defendants.

**MEMORANDUM & ORDER**
22-CV-02880 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff has asserted New York statutory and common law claims based on allegations that Defendants misleadingly advertised the quantity of food contained in various menu items sold at their restaurants.  ECF No. 1.  The Court grants Defendants' motions to dismiss Plaintiff's complaint in full, *see* ECF Nos. 23 & 26, for the reasons set forth below, principally because the advertisements were not misleading as a matter of law.  The Court denies Plaintiff's request made in his opposition brief for leave to amend his complaint.

**FACTUAL BACKGROUND**

Plaintiff alleges that McDonald's and Wendy's publish advertisements with pictures of their menu items that look more appealing than how the menu items turn out when served to customers.  ECF No. 1 ¶¶ 4–6, 25.  Not only do the menu items generally appear more appetizing in the advertisements, but the ads also allegedly overstate the amount of toppings and, for hamburgers, the thickness of the beef patties.  *Id.* ¶¶ 7, 13, 26.  To illustrate this allegedly misleading behavior, Plaintiff identifies two advertisements that Wendy's published on its website for the Dave's Single hamburger and the Bourbon Bacon Cheeseburger, along with a YouTube video showing a television commercial for the latter item.  *Id.* ¶¶ 4–5, 14.  Plaintiff

also identifies an advertisement that McDonald's published on its website for its standard cheeseburger. *Id.* ¶ 27.

Plaintiff alleges that Defendants achieve the exaggerated patty size in their advertisements by using uncooked meat in the ads because "[i]n general, meat shrinks 25% when cooked." ECF No. 1 ¶¶ 8–9, 35–36. Plaintiff alleges this overstatement is readily apparent because, in McDonald's advertisements, "the beef patty extend[s] all the way to the edge of the bun," but the patty "comes nowhere near the edge of the bun" when a hamburger is actually served. *Id.* ¶¶ 28–30. To support his allegation that Defendants engaged in this practice, Plaintiff cites an interview with a "food stylist" who has allegedly worked to prepare advertisements for both Wendy's and McDonald's. *Id.* ¶¶ 11–12, 32–34. In that interview, she purportedly corroborated Plaintiff's allegation that Defendants use uncooked, or partially seared, burger patties for their ads because "fully cooked burgers tend to shrink and look less appetizing." *Id.*

As evidence that customers are actually deceived by Defendants' advertisements, Plaintiff's complaint quotes from several social media influencers and "food reviewers" who have complained about the difference between the manner in which Wendy's menu items are advertised and the manner in which they are served. ECF No. 1 ¶¶ 15–24. Plaintiff refers to a similar YouTube video posted by an alleged McDonald's employee but does not identify any similar criticism by McDonald's customers. *Id.* ¶ 31. Plaintiff alleges that Defendants' advertisements harm customers because "they are receiving food that is much lower in value than what is being promised" and "mak[ing] purchases that they would not have otherwise made." *Id.* ¶¶ 38, 39. Plaintiff further asserts that "Defendants are also unfairly competing with burger restaurants that more fairly advertise the size of their burgers and menu items," thereby

"unfairly diverting millions of dollars in sales that would have gone to competitors." *Id.* ¶¶ 41–42.

Plaintiff alleges that he was personally harmed by Defendants' advertisements because he purchased a Bourbon Bacon Cheeseburger and a Big Bacon Cheddar Cheeseburger from a Wendy's located in this District and a Big Mac and a standard cheeseburger from a McDonald's located in this District. ECF No. 1 ¶ 44. When doing so, Plaintiff "expected the burgers that he purchased to be similar in size to the pictures of the burgers in Defendants' advertisements and on Defendants' store menu ordering boards. However, the size of the burgers that [Plaintiff] received were much smaller than advertised and he was financially damaged as a result." *Id.* Plaintiff's complaint does not state that he saw any of the specific advertisements that he identifies in the complaint, and his complaint makes no allegation about how the items he ordered were visually presented in the particular stores that he visited. *Id.* ¶¶ 44, 65, 68–69. Plaintiff's complaint does not identify a single advertisement for Wendy's Big Bacon Cheddar Cheeseburger or McDonald's Big Mac, two of the items he purchased. *See* ECF No. 1. Plaintiff seeks to represent a nationwide class of customers who purchased menu items from either Defendant between May 1, 2016, and the present. *Id.* ¶ 50.

Plaintiff asserts four causes of action. First, he asserts a claim purportedly under consumer protection statutes enacted by "[e]ach of the fifty states and the District of Columbia," including the New York Deceptive Acts and Practices Act, which is codified in New York's General Business Law. ECF No. 1 ¶ 67 (citing N.Y. Gen. Bus. Law § 349). However, Plaintiff's complaint mentions only purchases of Defendants' products that he made in New York, *see* ECF No. 1 ¶ 44, and his opposition brief addresses only New York's General Business Law and not the consumer protection law of any other state, *see* ECF No. 29. Plaintiff also

3

asserts claims for breach of contract and unjust enrichment.  ECF No. 1 ¶¶ 70–89.  Although

Plaintiff's complaint initially asserted a claim for negligent misrepresentation, *see id.*, he

"withdr[ew] his claim for negligent misrepresentation" in his opposition brief, *see* ECF No. 29 at

14.

## **LEGAL STANDARD**

A complaint must plead "enough facts to state a claim to relief that is plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[1]  "A claim is plausible 'when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged.'"  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d

Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although all allegations

contained in a complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."

*Iqbal*, 556 U.S. at 678.  Although Plaintiff's claims under New York's General Business Law are

based on allegedly deceptive practices, since the General Business Law "extends well beyond

common-law fraud to cover a broad range of deceptive practices, and because a private action

under § 349 [of the General Business Law] does not require proof of the same essential elements

(such as reliance) as common-law fraud, an action under § 349 is not subject to the pleading-

with-particularity requirements of Rule 9(b)."  *Pelman v. McDonald's Corp.*, 396 F.3d 508, 511

(2d Cir. 2005); *see also Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 575 (S.D.N.Y.

2021) (explaining that "[p]laintiffs [we]re not required to meet the heightened pleading

requirements of Federal Rule of Civil Procedure 9(b) for their claims" under either Sections 349

or 350 of the General Business Law).

---

[1]      Unless noted, case law quotations in this order accept all alterations and omit internal
quotation marks, citations, and footnotes.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint," along with any document for which "the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021). Courts are also "permitted to consider matters of which judicial notice may be taken." *Simmons v. Trans Express Inc.*, 16 F.4th 357, 360 (2d Cir. 2021). "[W]here a document is referenced in a complaint, the documents control and the Court need not accept as true the allegations in the complaint that are inconsistent with these documents." *Housey v. Proctor & Gamble Co.*, No. 22-888-cv, 2022 WL 17844403, at *2 (2d Cir. Dec. 22, 2022) (affirming dismissal of General Business Law claims).

## **DISCUSSION**

The Court dismisses each of Plaintiff's claims for the reasons described more fully below. Plaintiff's claims under New York's General Business Law are dismissed both because Plaintiff has not adequately alleged that he was injured by Defendants' advertisements, since he does not allege that he ever saw them, and because he has failed to allege that the advertisements were materially misleading. Plaintiff's breach of contract claim fails because the advertisements themselves did not constitute offers to enter into a contract with Plaintiff and because Plaintiff has otherwise failed to allege the material terms of his purported contracts with Defendants. Plaintiff's unjust enrichment claim fails because Plaintiff has failed to allege that Defendants engaged in any unfair practices, and, even if he had, it would be duplicative of his claims under the General Business Law.

## I.     Defendants' Advertisements Did Not Violate New York's General Business Law

Plaintiff asserts claims under Sections 349 and 350 of New York's General Business Law (the "GBL").  ECF No. 1 ¶ 67.  "Section 349 of the GBL provides a cause of action for any person injured by deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service," and "Section 350 of the GBL prohibits false advertising in the conduct of any business, trade or commerce."  *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020).  "These two statutes require a claimant to show that the defendant engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 96 (2d Cir. 2023).

To determine whether conduct related to a GBL claim is materially misleading, courts apply "an objective definition of misleading, under which the alleged act must be likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Id.*; *see also Chen*, 954 F.3d at 500 (describing same elements and explaining that a claim under "Section 350 of the GBL . . . is analyzed under the same reasonable consumer standard as Section 349").  The Court is permitted to resolve this issue on a motion to dismiss because "[u]nder either provision [of the GBL], it is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer."  *Chen*, 954 F.3d at 500; *see also Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 171 N.E.3d 1192, 1198 (N.Y. 2021) ("What is objectively reasonable depends on the facts and context of the alleged misrepresentations and may be determined as a matter of law or fact (as individual cases require).").

6

Plaintiff has failed to allege the injury necessary to maintain his GBL claims because his complaint does not allege that he saw the specific advertisements that he asserts were misleading. Although "[r]eliance is not an element of a claim under General Business Law § 349," a plaintiff must still allege that a defendant's purportedly misleading practice caused his injury. *Gale v. Int'l Bus. Machs. Corp.*, 781 N.Y.S.2d 45, 46–47 (2d Dep't 2004) (affirming dismissal of GBL claims). If a plaintiff is challenging a misleading advertisement, he must therefore allege that "he saw any of these statements before he purchased" the defendant's product. *Id.* at 47; *see also Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 100 N.Y.S.3d 227, 229 (1st Dep't 2019), *aff'd*, 171 N.E.3d 1192, 1198 (N.Y. 2021) (dismissing GBL claims brought by plaintiffs who "fail[ed] to allege . . . [they] ever saw the allegedly deceptive representations that purportedly harmed them"). Courts within the Second Circuit therefore regularly dismiss GBL claims brought by plaintiffs who did not allege that they ever saw the advertisements that they claimed were misleading before purchasing the advertised products from defendants.[2]

---

[2]    *Grossman v. GEICO Cas. Co.*, No. 21-2789-cv, 2022 WL 1656593, at *3 (2d Cir. May 25, 2022) (affirming dismissal of GBL claims based on allegedly misleading statements on defendant's website because "[p]laintiffs d[id] not allege that they saw [defendant's] advertisements" or even "that they ever visited" the website prior to transacting business with defendant); *Bibicheff v. PayPal, Inc.*, 844 F. App'x 394, 396 (2d Cir. 2021) (affirming dismissal of GBL claims for failure to allege injury because plaintiff did not allege that she saw allegedly misleading statements on defendant's website "until after the fraudulent activity and resulting harm had occurred"); *Turk v. Rubbermaid Inc.*, No. 21-cv-270, 2022 WL 836894, at *9 (S.D.N.Y. Mar. 21, 2022) (holding that plaintiffs failed to allege injury because "they failed to allege that they actually saw or were aware of the statements in question on the [p]roducts' labels before buying them" even though complaint included a conclusory allegation that plaintiffs "relied on representations on the [p]roducts and on websites selling the [p]roducts"); *Zachmann v. Coleman Co. Inc.*, No. 20-cv-9146, 2022 WL 161480, at *4 (S.D.N.Y. Jan. 18, 2022) ("[P]laintiffs' allegations are insufficient because although the plaintiffs cite particular misleading statements by defendant regarding the reliability of the coolers, they nowhere state in their complaint that they saw any of these statements before they purchased the coolers.").

Even if Plaintiff had seen the advertisements cited in his complaint, he fails adequately to allege that a reasonable customer would likely be misled by them. To the extent Plaintiff alleges that Defendants present their products in a way that makes them appear generally more appetizing than they turn out to be when served, an assertion that Plaintiff has withdrawn in his opposition brief, *see* ECF No. 29 at 2, those aspects of Defendants' advertisements would be immaterial puffery. The Second Circuit has recently identified "two types" of puffery that potentially apply to GBL claims: "(1) subjective statements that cannot be proven true or false and are therefore non-actionable puffery as a matter of law and (2) objective statements that can be proven true or false but are so exaggerated that no reasonable buyer could justifiably rely on them." *MacNaughton*, 67 F.4th at 96.

The first category of puffery "often manifests as exaggerations or overstatements that mention nothing specific, but rather amount to general claims of superiority expressed in broad, vague, and commendatory language that are considered to be offered and understood as an expression of the seller's opinion only." *Id.* The second category "involves exaggerated, blustering, and boasting statements that are *objective*—and therefore technically provable—but upon which no reasonable buyer would be justified in relying." *Id.* (emphasis in original). If a statement that falls within the second category is "plausible," then "a defendant can only prevail on the puffery defense after a fact-intensive inquiry on how a reasonable buyer would react," and "[t]hat inquiry cannot be resolved at the pleadings stage." *Id.* at 97.[3]

---

[3]     The Second Circuit has provided examples of hypothetical statements to illustrate how courts should determine whether a defendant's statements are plausible and, therefore, not amenable to a motion to dismiss on puffery grounds: "If a bubblegum brand advertised that its gum permits chewers to 'blow a bubble as big as the moon,' the statement would be literally false, but it is facially implausible that any reasonable buyer could justifiably rely on that claim. That statement would therefore be ripe for dismissal on puffery grounds. Yet, if the company falsely advertised that you could 'blow a bubble bigger than your own head,' it is plausible that a reasonable buyer could be misled." *MacNaughton*, 67 F.4th at 97.

Putting aside Plaintiff's claims about the size of Defendants' meals, Defendants' act of advertising their products in a manner that makes them visually appealing falls into the first category of puffery described in *MacNaughton* because such presentation makes no objective claims about Defendants' products.  Defendants' efforts to present appetizing images of their products are no different than other companies' use of visually appealing images to foster positive associations with their products, which courts within the Second Circuit have held to be immaterial puffery as a matter of law.  *See Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir. 2019) (affirming dismissal of GBL claims based on visual presentation of product because "[t]he use of physically fit and attractive models using and enjoying advertised products is so ubiquitous that it cannot be reasonably understood to convey any specific meaning at all"); *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 153–54 (S.D.N.Y. 2022) (holding that defendant's "depictions of happy sheep in pastoral settings, [we]re classic puffery, which [wa]s not actionable under § 349," because the images made no objective claims about defendant's wool harvesting practices).

Defendants' depiction of the size of their products, however, relates to an objective fact and is therefore not puffery.  *See Fishon v. Peloton Interactive, Inc.*, No. 19-cv-11711, 2020 WL 6564755, at *7 (S.D.N.Y. Nov. 9, 2020) (holding that defendant's statement about the size of its library of on-demand workout videos was "an objective, factual statement" and "d[id] not constitute puffery as a matter of law").  Nevertheless, Plaintiff's GBL claims still fail because a reasonable customer would not have been misled by the advertisements that Plaintiff cites.  As described above, Plaintiff does not allege that Defendants created a misleading impression about the size of their meals by using more meat in their advertisements than they serve in their stores—he instead alleges that Defendants create this impression by using an identical amount of

uncooked meat in their ads.  ECF No. 1 ¶¶ 8–12, 28–34.  This concession that both the advertisements and the products served in stores contain the same amount of meat is fatal to Plaintiff's claims.

Although Plaintiff's complaint presents cropped pictures of Defendants' products from their websites, the entirety of the advertisement on each website page describes in objective terms how much total food customers would receive.  ECF No. 1 ¶¶ 4, 14, 27.  Wendy's website pages advertising the Bourbon Bacon Cheeseburger and the Dave's Single hamburger both state the calorie content of each burger, and the first sentence of each advertisement states that each burger is made using "[a] quarter-pound* of fresh beef."[4]  Only a few lines below that sentence, each webpage reveals the asterisk to be a caveat that says "[a]pproximate weight before cooking."  ECF No. 26 at 7.  The advertisement that Plaintiff cites for McDonald's standard cheeseburger makes no specific claims about the size of the beef patty but says that the burger as a whole is 300 calories.[5]  Plaintiff alleges neither that Defendants use more meat than stated in these advertisements to create the pictures of the products used in the ads nor that Plaintiff received less meat than described in the ads.  ECF No. 1 ¶¶ 8–12, 32–36, 44.  And Plaintiff's allegation that Defendants prepare the meat used in their advertisements in a manner that merely

---

[4]     *Dave's Single*, WENDY'S (last visited Sept. 30, 2023), https://order.wendys.com/product/30000/daves-single?lang=en_US (referenced in Plaintiff's complaint, ECF No. 1 ¶ 4).  Although the link that Plaintiff included to the advertisement on Wendy's website for the Bourbon Bacon Cheeseburger is no longer active, as the burger has apparently been discontinued, Wendy's presented a copy of the full advertisement for that item as part of its motion to dismiss, *see* ECF No. 26 at 7, and Plaintiff has not contended in his opposition that Wendy's did not present the same advertisement cited in the complaint, *see* ECF No. 29.

[5]     *Cheeseburger*, MCDONALD'S (last visited Sept. 30, 2023), https://www.mcdonalds.com/us/en-us/product/cheeseburger.html#accordion-c921f9207b-item-842cb18782 (referenced in Plaintiff's complaint, ECF No. 1 ¶ 27).

makes it appear larger than the meat he received fails to allege that the ads are misleading. Several courts within the Second Circuit have dismissed GBL claims in analogous circumstances where customers received the same objective amount of product that was advertised yet alleged that the defendants' advertisements made it appear that customers would receive a larger portion.[6]

The fact that Plaintiff's complaint quotes various social media personalities who complained about the size and quality of Defendants' products does not change this result. "[W]hile plaintiffs are not required to meet the heightened pleading requirements of Rule 9(b) for GBL claims, plaintiffs must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers.  Instead, [p]laintiffs must plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lee v. Mondelez Int'l, Inc.*, 637 F. Supp. 3d 116, 132 (S.D.N.Y. 2022) (granting motion to dismiss GBL claims); *see also Winston v. Hershey Co.*, No. 19-cv-3735, 2020 WL 8025385, at *4 (E.D.N.Y. Oct. 26, 2020) (dismissing GBL claim and holding that claim was not "saved by [plaintiff's] identification of a handful of third-party vendors and a journalist who erroneously identified [defendant's] product").

---

[6]      *Wurtzburger v. Kentucky Fried Chicken*, No. 16-cv-8186, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017) (holding that advertisement was not misleading because plaintiff failed to allege that she received less food than advertisement described, even though picture used in advertisement caused plaintiff to "expect[] KFC to deliver a bucket of chicken filled to the rim"); *Green v. SweetWorks Confections, LLC*, No. 18-cv-902, 2019 WL 3958442, at *6 (S.D.N.Y. Aug. 21, 2019) (holding that size of candy box was not materially misleading, despite plaintiff's claim that the box "ma[de] it appear to [p]laintiff and [c]lass members that they are buying more candy than what is actually being sold," because "the box clearly and accurately discloses the net weight and amount . . . of the candy contained in the box"); *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 193–94 (E.D.N.Y. 2018) (holding that size of candy box was not materially misleading because "[w]here consumers only care about the amount or quantity of food, the actual size of the candies is immaterial when the [p]roduct affirmatively discloses how much food the box contains").

11

The Second Circuit has held, when assessing whether a statement made on a product's packaging is misleading, that "[r]easonable consumers should not be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018). Based on this holding, Plaintiff asserts that the Court cannot consider the portions of the advertisements on Defendants' websites that Plaintiff excluded from the excerpts in his complaint because "[c]onsumers cannot be expected to analyze pre-cooked weight disclosures in small print on Defendants' websites to determine whether a menu item is materially overstated in an advertisement or store menu ordering board." ECF No. 29 at 5.

Plaintiff's reliance on *Mantikas* is misplaced because Plaintiff's complaint has identified Defendants' websites as the advertisements that are supposedly misleading; he has made no allegations about how Defendants' products appear on an in-store menu. *See* ECF No. 1 ¶¶ 4, 14, 27. Nothing about *Mantikas* changes the Court's obligation to "consider the challenged advertisement[s] as a whole, including disclaimers and qualifying language." *Hardy v. Olé Mexican Foods, Inc.*, No. 22-1805-cv, 2023 WL 3577867, at *3 (2d Cir. May 22, 2023) (explaining that "*Mantikas* reaffirmed" that obligation); *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 705 (2d Cir. 2020) (explaining that "the district court properly analyzed the [defendant's] packaging as a whole in analyzing whether it was potentially deceptive or misleading").

Since *Mantikas*, "district courts within the Second Circuit have continued to recognize that clarification can defeat a claim" that a defendant's advertisement is deceptive if the plaintiff challenges "an ambiguous representation" made in the advertisement but have held "that clarification cannot correct an *unambiguously* misleading representation." *Foster v. Whole*

*Foods Market Grp.*, No. 22-cv-1240, 2023 WL 1766167, at *3 (E.D.N.Y. Feb. 3, 2023)
(emphasis in original) (granting motion to dismiss GBL claims).  Plaintiff's case represents the
latter circumstance; Plaintiff is challenging pictures on Defendants' webpages, which gave
customers a visual impression about the size of Defendants' meals, that was clarified by
prominent, objective information about the weight and caloric content of those meals on the
same webpage. *See Winston*, 2020 WL 8025385, at *4 (dismissing GBL claims and holding that
even if candy's white packaging might give customers the impression that candy contained white
chocolate, "the ingredient list confirm[ed]" the absence of white chocolate).

Although Plaintiff's complaint predominantly focuses on the size of Defendants'
hamburger patties, it also makes several conclusory assertions that Defendants' images of their
burgers "overstate[]" the amount of toppings included in the burgers.  ECF No. 1 ¶¶ 1, 3, 7, 13.
But Plaintiff's description of his own purchases from Defendants mentions nothing about the
amount of toppings he received and instead complains only about "the size of the burgers."  *Id.* ¶
44.  Plaintiff's conclusory allegations that Defendants misleadingly depict the amount of
toppings they serve, uncoupled from any description of the toppings he received, are not entitled
to the presumption of truth and fail adequately to allege that Plaintiff was injured by Defendants'
topping-related representations.  *See Winston*, 2020 WL 8025385, at *5 n.6 (rejecting theory of
GBL liability based on allegation "so conclusory and devoid of factual content that the [c]ourt
need not, and d[id] not, credit it").

Mirroring his complaint, Plaintiff's opposition brief purports to "challenge" "the amount
of toppings" depicted in Defendants' advertisements, *see* ECF No. 29 at 2, but the portion of
Plaintiff's brief that attempts to explain why Defendants' advertisements are misleading again
focuses solely on the size of Defendants' hamburger patties, *see id.* at 4–8.  Since Plaintiff has

13

"fail[ed] to defend in his opposition papers" his "theor[y] of liability" related to Defendants'
alleged overstatement of the amount of toppings they serve, the Court deems this theory
"abandoned." *Brown v. Kellogg Sales Co.*, No. 20-cv-7283, 2022 WL 992627, at *5 (S.D.N.Y.
Mar. 31, 2022) (rejecting theory of liability for plaintiff's GBL claim because "[w]hen a party
fails adequately to present arguments, including in an opposition brief, courts may consider those
arguments abandoned").

But Plaintiff's toppings-based theory of liability would fail even if he had not abandoned
it. Defendants' advertisements do not "specif[y] the quantity of an ingredient" other than meat,
so their depiction of toppings does not become misleading simply because Defendants' actual
products may contain less than Plaintiff's "personally preferred amount" of toppings. *Brown*,
2022 WL 992627, at *4–5 (holding that prominent picture of strawberry on defendant's pop-tart
packaging would not mislead a reasonable customer about the total amount of strawberries the
product actually contained). Since Plaintiff does not allege that he failed altogether to receive
any particular topping that was depicted in one of Defendants' advertisements, his apparent
dissatisfaction with the amount of each topping fails to state a claim.[7] *See Harris v. Mondelez
Global LLC*, No. 19-cv-2249, 2020 WL 4336390, at *2–3 (E.D.N.Y. July 28, 2020) (dismissing
GBL claim based on defendant's representation that its cookies were "[m]ade [w]ith [r]eal
[c]ocoa" when the cookies "indisputably d[id] contain cocoa"); *Wynn v. Topco Assocs., LLC*, No.
19-cv-11104, 2021 WL 168541, at *2, *4 (S.D.N.Y. Jan. 19, 2021) (dismissing GBL claim based
on defendant's description of its product as "Vanilla Almondmilk" because plaintiffs

---

[7]     Since the Court is dismissing Plaintiff's claims based on Defendants' allegedly
misleading representations about toppings for the reasons described in this order, the Court need
not (and does not) reach McDonald's argument that its advertisements position toppings towards
the front of a burger to make them more visible to customers without using any fewer toppings
than McDonald's ultimately serves. *See* ECF No. 24 at 9.

"acknowledge[d] that the flavor [wa]s at least partially constituted by real vanilla" even though the product's vanilla taste was also derived from "other natural and artificial flavors").

Finally, as mentioned above, Plaintiff purports to assert claims on behalf of unnamed class members pursuant to the consumer protection laws of each of the fifty states and the District of Columbia.  ECF No. 1 ¶ 67.  But since Plaintiff alleges only that he made purchases from Defendants in New York, and does not allege any other purchases from Defendants tied to any other state, *see id.* ¶ 44, any claims that Plaintiff purports to assert based on other states' statutes fail alongside his GBL claims.  Courts regularly reject attempts by New York plaintiffs who fail to state a claim under the GBL to invoke the consumer protection laws of other states on behalf of unnamed putative class members.[8]

## II.    Plaintiff's Breach of Contract and Unjust Enrichment Claims Fail

Plaintiff's breach of contract claim also fails.  Under New York law, "[a]n advertisement for the sale of goods generally does not constitute an offer," and "[i]n order for an advertisement for the sale of goods to constitute an offer, it must be plain and clear enough to establish the intended terms of the proposed contract."  *Amalfitano v. NBTY Inc.*, 9 N.Y.S.3d 352, 354 (2d Dep't 2015) (finding that advertisement did not amount to an offer and affirming summary judgment dismissing breach of contract and GBL claims); *see also McCabe v. ConAgra Foods,*

---

[8]      *Warren v. Coca-Cola Co.*, No. 22-cv-6907, 2023 WL 3055196, at *8 n.10 (S.D.N.Y. Apr. 21, 2023) ("[B]ecause all of [p]laintiff's claims under New York law fail as a matter of law, she cannot bring claims for products she did not purchase in different states."); *Herceg v. Chobani, LLC*, No. 22-cv-5137, 2023 WL 6162939, at *8 n.3 (S.D.N.Y. Sept. 21, 2023) ("As [p]laintiff has not alleged a valid claim under the GBL, [p]laintiff's cause of action based upon other states' laws must be dismissed as the [c]ourt lacks jurisdiction over the state-law class claims of the unnamed putative class members."); *Miramontes v. Ralph Lauren Corp.*, No. 22-cv-4192, 2023 WL 3293424, at *8 (S.D.N.Y. May 5, 2023) (dismissing claims based on consumer protections laws of states other than state where plaintiff resided because plaintiff "ha[d] utterly failed to plead any facts indicating that she may" bring such claims).

*Inc.*, 681 F. App'x 82, 84 (2d Cir. 2017) (affirming dismissal of contract claim because "[t]he general rule in New York is that a promotion or advertisement is not an offer").

The advertisements cited in Plaintiff's complaint do not constitute offers that were capable of being accepted upon Plaintiff's arrival at a McDonald's or Wendy's store; the advertisements do not even contain the prices of the applicable products.  ECF No. 1 ¶¶ 4, 14, 27; *see Emergency Physician Servs. of N.Y. v. UnitedHealth Grp., Inc.*, No. 20-cv-9183, 2021 WL 4437166, at *12 (S.D.N.Y. Sept. 28, 2021) (dismissing contract claim because "the [c]omplaint d[id] not plead a necessary meeting of the minds as to the price of services, which under New York law is an essential contract term").  The remainder of Plaintiff's complaint does not describe the in-store advertisements, or other information that was available to Plaintiff, about Defendants' products before he purchased them.  *See* ECF No. 1 ¶ 44.  These omissions preclude Plaintiff from overcoming New York's default rule that an advertisement is not an offer capable of being accepted.  *See Cheng v. TD Bank, N.A.*, No. 21-cv-3282, 2022 WL 2316175, at *4–5 (E.D.N.Y. June 28, 2022) (holding that plaintiff had not sufficiently alleged that defendant's advertisement was an offer and dismissing both breach of contract and GBL claims).

Plaintiff's unjust enrichment claim fails because it is based on the same set of facts as his GBL claims.  Under New York law, "unjust enrichment is not a catchall cause of action to be used when others fail."  *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012).  Instead, "[i]t is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.  Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled."  *Id.* (dismissing unjust

enrichment claim as duplicative because "plaintiffs allege[d] that [defendant] committed actionable wrongs").

Since the Court has ruled as a matter of law that Defendants' advertisements were not misleading, and Plaintiff has alleged no other basis for why allowing Defendants to keep the money received from his purchases would be unjust, his unjust enrichment claim must be dismissed. *Axon*, 813 F. App'x at 706 (holding that plaintiff whose GBL claim failed "ha[d] not alleged a fraud that would render [defendant's] enrichment unjust"); *Harris*, 2020 WL 4336390, at *3 (dismissing unjust enrichment claim because it was "premised on the same theory of misrepresentation" as failed GBL claim).  Additionally, since Plaintiff's unjust enrichment claim is based on the exact same alleged conduct as his GBL claim, Plaintiff has "fail[ed] to show how this claim is not purely duplicative of his other claims," and his "boiler-plate allegation does nothing to suggest that the circumstances here created an equitable obligation running from defendant to plaintiff."  *Winston*, 2020 WL 8025385, at *7 (dismissing GBL and unjust enrichment claims); *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017) (dismissing unjust enrichment claim as duplicative of failed GBL claim because plaintiff's "unjust enrichment claim relie[d] on the same facts as his other causes of action" and plaintiff "fail[ed] to explain how [his] unjust enrichment claim is not merely duplicative"); *Campbell v. Whole Foods Market Grp., Inc.*, 516 F. Supp. 3d 370, 394 (S.D.N.Y. 2021) (dismissing unjust enrichment claim as duplicative of GBL claim, even though GBL claim survived dismissal, and even though plaintiff purported to make unjust enrichment claim in the alternative).

## III.    The Court Declines to Grant Plaintiff Leave to Amend

In the final sentence of Plaintiff's brief, he says, "[t]o the extent the Court is inclined to dismiss any of Plaintiff's claims, Plaintiff respectfully requests that the Court do so without prejudice and permit Plaintiff leave to file an amended complaint under Rule 15 of the Federal

Rules of Civil Procedure." ECF No. 29 at 16. Although the Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)," the Court declines to grant Plaintiff leave to amend. *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (affirming denial of leave to amend). "A court should freely give leave when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (affirming denial of leave to amend). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *In re Tribune Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 175 (2d Cir. 2021) (affirming denial of leave to amend).

After Defendants filed pre-motion letters that previewed for Plaintiff the grounds on which they intended to move to dismiss his complaint, the Court held a telephone conference to discuss the proposed motions to dismiss, during which Plaintiff's counsel was not inclined to amend the complaint in response to Defendants' arguments. *See* ECF Minute Entry dated Aug. 22, 2022 (describing pre-motion conference). The fact that Plaintiff's opposition brief provides no explanation about how he intends to amend his complaint is sufficient reason by itself to deny leave to amend. *See Gregory v. ProNAi Therapeutics Inc.*, 757 F. App'x 35, 39 (2d Cir. 2018) (affirming denial of leave to amend where "plaintiffs sought leave to amend in a footnote at the end of their opposition to defendants' motion to dismiss" and "included no proposed amendments"); *Harris*, 2020 WL 4336390, at *3 (denying leave to amend GBL claims because plaintiff "offer[ed] no explanation of what new allegations might be added"). This conclusion is reinforced by the fact that Plaintiff has not attempted to explain what information he has learned

since the pre-motion conference that he would include in a potential amendment.  *See Hawkins v. Coca-Cola Co.*, No. 21-cv-8788, 2023 WL 1821944, at *10 (S.D.N.Y. Feb. 7, 2023) (denying leave to amend GBL claims where Plaintiff amended the complaint once after a pre-motion conference and "ha[d] failed to otherwise suggest that she is in possession of facts that would cure the deficiencies that [d]efendants highlighted in the instant motion and that the [c]ourt highlighted in this [o]pinion").

In any event, granting Plaintiff leave to amend would be futile because even if Plaintiff could allege new facts indicating that he saw Defendants' allegedly misleading advertisements, he cannot cure the other defects in his claims.  Regardless of any amendment Plaintiff might make, he cannot take back his concession that Defendants use the same amount of meat in their advertisements as in the products they serve.  Nor can he change the fact that Defendants' advertisements make no measurable representations about the amount of toppings customers will receive.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' motions to dismiss, *see* ECF Nos. 23 & 26, and DENIES Plaintiff's request for leave to amend his complaint, *see* ECF No. 29.  The Clerk of Court is respectfully directed to enter judgment in favor of Defendants and to close this case.

SO ORDERED.

/s/ Hector Gonzalez
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
September 30, 2023